It may not be easy to divine from our brief, but my colleagues and I labored heartily to try to winnow down the issues in this appeal. But there are many of them, and they all proceed from a basic flaw, a misreading of the congressional intent in enacting the Safe Drinking Water Act. Your Honor, Judge Taubman found in the Oregon v. Ashcroft case that Which cert has now been granted by the Supreme Court? Well, okay, let me try a different approach. I doubt whether it was on this issue, because it's a well-established principle that where Congress passes a statute that has the possibility of intruding on an area that is commonly reserved to state regulation, that the intention should be, as Your Honor put it, We submit that the language of the Safe Drinking Water Act, and most particularly the provisions that are invoked here under 300G3, 42 U.S.C. 300G3, dealing with enforcement, evidence a clear and unmistakable congressional intent to preserve the traditional powers to the state. And that reservation of rights Is that it, or are we really talking about the power to enforce? Because it's a congressional statute that is at issue here. Yes. And your argument, as I understand it, is because the State of California has been given primary enforcement responsibility, that that somehow deprives the Environmental Protection Agency and the United States of jurisdiction to enforce the terms of the act. No, that's not our argument. And if I've misled the Court, I apologize. Perhaps you can clarify. Now, this is clearly, these provisions under 300G3 clearly are enforcement provisions. But the enforcement, the enforcement power of the EPA is conditioned on the reference by the State in this particular case, which in our view never occurred. And Congress was very specific about how that reference was to take place. They required that it be brought, be referred either by the governor or by someone with clear authority, by someone authorized by the principal agency responsible for water, health and safety, to manifest that expression of need to require EPA involvement rather than to refer it to the States for enforcement. Does the word agency in that statute have a definition within the statute? Where is the word agency going to get its definition? Is it going to get it from State law or is it going to draw it from Federal law? They're going to get it from State law. But it's not coming from the EPA then? No. No. I think the EPA probably could have. Well, certainly Congress could have been more and could have expressed that it could be, you know, any agency responsible, any agency having any involvement, any authorized agent of or chief of any agency responsible. So what do we do with the California provision that says that agency includes a division? Agency includes a division, but it may include a division, but it depends on whether the person within that division has the authority that's been expressly delegated by the chief executive officer or by the head of the agency. And there is no evidence here that that delegation took place. So division may include agency, but the agency has to make the delegation. And they do sometimes. There are expressions of delegated authority, but there was no evidence that there was in this case. Chairman, I'm still having a hard time going back to my jurisdictional question, because it really does seem to me that it is an issue of subject matter jurisdiction. Maybe that's not quite the right term. But we call it standing, Your Honor. I'm not sure I agree with that. Yeah, and I don't know if standing is the right word either. But let me harken back to my days when I was handling cases that occurred on Indian reservations or on Federal property in the middle of cities. And we would have instances where the land title record as a result of the congressional action created concurrent jurisdiction in both Federal law enforcement agencies and city or county or state law enforcement agencies to enforce crimes that occurred, for example, in a national forest. And why isn't this situation more like that, that there is concurrent jurisdiction in both EPA and whatever the state has to do to enforce the provisions of the Clean Water Act, but that the enforcement mechanism contemplates that the state will have primary responsibility? But it seems to me your argument has to be primary means exclusive unless the provisions of the referral are followed and a proper state official fully delegated to do so makes the referral back to EPA before EPA can enforce it. Your Honor, there are no. Isn't that your argument? I don't think so. The EPA does have authority to initiate enforcement actions. Those procedures weren't followed here. They don't claim to have been followed here. They have emergency powers, which it's interesting because they were not used here, and yet this case was treated as if it was some form of an emergency seven years later, seven years after the fact. But the procedure that they did follow here was the one in which a state that has assumed and has been found to possess the ability to enforce the standards of the Federal Act, at least the minimum standards promulgated under the Federal Act and the regulations, doesn't want to do it itself, has not followed its own procedures, it doesn't feel they're adequate, and I'll get to that in a moment, because if we get beyond jurisdiction, that's really where the errors lie, is in the exercise of that jurisdiction. But what we are submitting is, as a threshold issue, the Congress recognized that if the state that has assumed authority wants it, wants Federal enforcement, they've got to ask for it and do it in a very specific way, so that the state has manifested its intention, not a letter from dear Dave to dear Bill, that was never authenticated, other than somebody saying we found this in the EPA files. There's no indication that the EPA, when they got it, how they treated it, there's no administrative record at the EPA. But your argument has to be that absent following those procedures, that EPA is without authority to initiate an enforcement action, it can't do it. It could do it under the alternate provisions. It gives, it's put on notice there's a problem. Well, the statute says two ways, right? Emergency or at the request of the. No, there is, I don't know. There are two clauses. There are two clauses and it says they may do so as authorized under paragraph 1 or 2A, which I hope I have here and perhaps I don't, which is where they may give notice to the public utility or to the water operator and an offer of assistance, and there's a whole set of procedures that follows that. That can be done on its own initiative, on the EPA's own initiative. But doesn't that procedure, at least the first clause, contemplate in essence a breakdown in the State's enforcement mechanism and notice by EPA to the State that, look, if you're not going to act, we're going to act. Right. And we're giving you, what is it, 30 or 60 days notice before we're going to come in here. Right. The EPA apparently didn't feel that way here and they did not invoke that. Right. So they're waiting for what Congress required as an action of the State to tell them to follow this alternate procedure that doesn't require notice and so forth, we need your help. But your quarrel then under B-2, as I understand it, is that it says, or if requested by the agency of such State which has jurisdiction over compliance by public water systems in the State, that that request was actually not made because the person who wrote the letter wasn't authorized to make the request on behalf of the agency. That's correct. And why wasn't Judge Fogel correct when he said you waited too long to raise that objection? That's not a jurisdictional objection. It's a procedural violation that may or may not be a defense to an enforcement action. Well, I believe that was raised, I was not involved in the early stages or in the trial of the case. I know that. But my reading of the record was that that was raised very early, albeit under the rubric of standing, which I think was a misnomer. Yeah. But it was treated as jurisdiction. But if it's not jurisdictional and if it is statutorily procedural, then why isn't it appropriate for the to conclude that Alice Hall just waited too long, assuming that we don't agree with your characterization that it was properly raised earlier? Why? In other words, unless it's subject matter jurisdiction, which obviously we have an obligation to raise or recognize at any stage of the litigation. I believe it is. Okay. I do believe it is. I think that has to be your position. Yes. That the jurisdiction is essentially ceded under the terms of this statute by the Federal Government to the States and is only returnable under these conditions. That's correct. That is the way I see it, other than this other procedure that can be followed that was not here. In other words, without the proper request by the State, there is no Federal question jurisdiction. That's correct.  That's our position. Now, let me just. Sure. Now, assuming we get beyond or the panel gets beyond jurisdiction, it then has to look at how that jurisdiction was exercised by the district court. And in our view, it far exceeded what Congress intended. There was no indication that Congress intended to bestow upon a district court the power and jurisdiction to hold public meetings, to get rate payers' views on the competency and personality of the regulated utility. There was no indication that there was any congressional intent to empower a district court under the rubric of enforcing violations of EPA regulations to make decisions about the resources available to operate public utilities, to force divestiture of a public utility that had, by the Court's own admission, no recent violations of EPA health and safety regulations, that is, the TORO system. Why doesn't that generally fall within the rubric of B-2, where it sets out all of the factors that the Court may consider in determining whether or not a judgment needs to be entered to protect the public health? Well, it can consider those things, but when it considers them, it must then fit them into a permissible remedy. And Judge Fogle recognized, acknowledged in his opinion appointing the receiver when he contemplated the possibility of divestiture, that he was required, that the Court was required to impose the least drastic alternative. Did he cite me as authority for that? Did he cite the authority for following, I think it's... For the least drastic. I mean, we have certainly in other areas of the law, juvenile justice being one of them, that there is a presumption, there is an order that the least drastic remedy be used. Can you give me the authority for that in this case? I think there was a case citation in the order, and I can try to find it. I've understood it, at least the way I've understood the Court to have intended it as being a rather well-established principle of equity, of the exercise of equity powers under any circumstances, under any statutory scheme. Here, where divestiture, this is, divestiture is so, well, before I get to divestiture, the $6.5 million worth of improvements that the Court ordered, most of which, and I think the record supports this, involved upgrades to the public utility system, are as clear as can be within the heart of the rate regulation authority of the California Public Utilities Commission. And one needs only to refer to the Hartwell decision, which we cited at page 41 of our opening brief, for the scope of the authority that. Here we go. Hartwell is 27-Cal-4-256, a 2002 decision of the State Supreme Court, in which it explored the scope of public utility commission regulatory jurisdiction over water health and safety. And a significant part. Counsel, I don't want to distract you too much from your argument, because I think you're going in a different direction, but if the CPUC retains authority to enforce water quality regulations, does that suggest that the state letter was from the wrong department in California? No, I'd have to concede that that's not the case, because the responsibility for water health and safety enforcement in California is shared between the Department of Health Services and the commission. And the Hartwell decision articulates the distinctions between the two and how the enforcement authority is shared. Now, my own view is that if this had been done properly, DHS would have gone to the PUC and sought its enforcement, invoked its enforcement powers before going to the EPA, and that's what Congress intended, and that's probably what would have happened in due course if these problems were as serious as Judge Fogle believed they were, but didn't because Mr. Spaeth wrote this letter to his friend at the EPA. And that's... Mr. Fairman, if we don't buy your jurisdictional argument and we conclude that that was okay to bring the EPA in and commence the action, then aren't you really quarreling with the term of the statute which says the court may enter in an action brought under this subsection as protection of public health may require? That's pretty broad language. It's pretty broad, but it's not specific enough. Well, it then goes on to, you know, to delineate taking into consideration alternative water supplies and whether or not the violations were serious and so on. Yes. But, I mean, how does Judge Fogle err in light of that broad language in looking to the general powers of the court to, first of all, conduct such proceedings as the court determines are necessary to inform it as to the nature and extent of the problem, and then fashion such judgment as it determines is necessary to protect the public health by including... Because it lacks the expertise to do that. And this court certainly has recognized, as the Supreme Court has, the principle of deference to administrative expertise. And I submit that that's what Congress intended to have happen when it left this broad area of regulation, enforcement, promulgation of minimum standards, et cetera, to the states. Judge Fogle should have deferred to the states. He lacked the expertise. And I can... Didn't he have the assistance of witnesses, not only from the state, but from the Monterey County Health Department and the Environmental... Not on the regulatory aspects that were left to the states by Congress. It did not know, for example, that when the state PUC orders $6 million worth of improvements, that the state has an obligation to ensure that that's recovered in rates, which Judge Fogle had no concern about whatsoever. I thought he made reference to the fact that he recognized that some of these changes might require the seeking by the receiver of rate adjustments. And if that took a longer period of time than he hoped, that the receiver could come back and make out a case for an extension of the injunctive relief that he ordered. Yes. And I can tell you this, that we are now in a proceeding before the Public Utilities Commission and have been told that they are concerned that they need to defer under res judicata principles to the judgment of the federal court. And this is the administrative ledger, so we're really in a catch-22 here. And I would like to reserve a little bit of time, but I would commend the court to review the Hartwell decision and compare that to the powers that the court exercised here. All right. Thank you, Mr. Fairman. We'll give you a little time on rebuttal. Thank you very much. Ms. Jonas, this seems to be a reunion day here in the Ninth Circuit. Yes, Your Honor. Good morning, Your Honors. Laurie Jonas for the plaintiff below, EPA, the appellee here. Could you move that microphone a little bit down? Is that better? Better. Great. Your Honor, this is a case, Your Honors, this is a case about public health, a case about the protection of public health and whether the district court acted properly in issuing the receivership order and the divestiture of the companies after finding hundreds of violations of the Safe Drinking Water Act and holding a nine-day trial where he heard testimony from county health department, state health department, federal health department, and expert witnesses for both sides, including an expert on PUC policies that the defendants put forth. Would you please address the portions of the record which show that Mr. Spath or Spath was authorized by the director of the Department of Health Services to write the letter he did to the EPA requesting federal action? There is nothing in the record on that topic. And the reason there is nothing in the record is that in seven years of litigation in the district court, no one suggested that Dr. Spath did not have delegated authority. There was an issue in the district court in 1999 about the issue. There was an objection to the report on grounds of irrelevance. Do you still think that was broad enough to bring up the question of standing? There was an objection that the letter was insufficiently detailed in that it did not set forth. There were two objections. One was authenticity and the other was relevance. And they were both overruled by the judge. And a third was as to the content of it, that it was insufficiently detailed. And that was the substantive. The objection was resolved because a custodian of records from EPA filed a declaration that basically authenticated this document as a public record and that met the requirements of Federal Rule of Evidence 901B7. A proper request requires delegation. And if that is a jurisdictional issue, should we not remand? I don't think we need to remand for two reasons, Your Honor. One is that I think that the Safe Drinking Water Act, if you look at the language of the statute, it talks about that the request needs to come from an agency of the state which has jurisdiction over compliance by public water systems within the state with drinking water regulations. That's what agency. That's the Department of Health Services, correct? It's the subdivision of the Department of Health Services. It is subdivision. The Department of Health Services, by statute, by the Health and Safety Code, has the responsibility, that's the word that's used in the statute, which I equate with jurisdiction. The California Code says that department, division, agency are all synonymous. We cite that provision in our brief. And so if an agency is included and a division is all included within the definition of agency, and you can look at the California Department of Health Services website, the agency that has regulatory authority over public water systems is the drinking water program. That's a subdivision of the Division of Drinking Water and Environmental Management. In other words, Dr. Spath was the head of something called the Division of Drinking Water and Environmental Management. Underneath him was something called the Drinking Water Program. And according to the California DHS website, that is the entity that regulates public water systems. That is the legal reason why this Court doesn't need to remand. The second reason this Court doesn't need to remand. So you say we should ignore the statute and look to the website? There is no statute that says which entity that I'm aware of that's been brought to this Court's attention that says which is the entity that, quote, in the sense of what the Safe Drinking Water Act is talking about. The Safe Drinking Water Act is very specific. It's the agency which has jurisdiction over compliance. And it doesn't say it has to be a cabinet-level agency or anything else. The Safe Drinking Water Act is silent. But doesn't the California statute lodge the responsibility for drinking water supervision in the Department of Health Services? Yes, and further in a division thereof. No, no, it doesn't say in a division thereof. It says in the Department of Health Services. And then it says this power can be delegated, Section 7, can be delegated to a deputy, right? And I agree with you that had there been a delegation to Mrs. Fath, it would have been valid. Now, question. Where is the delegation? There is no evidence. There was never an evidentiary hearing. This issue was raised two years after trial for the first time. And our position is it doesn't go to the subject matter jurisdiction of the court. And, therefore, the court was right, Judge Fogle was right in saying, I'm not going to hear this issue now. It's waived. It does not go to the subject matter jurisdiction. How can you waive a Federal question, jurisdiction question? There's several ways. One is to say that it's not, it doesn't go to subject matter jurisdiction. It can be a mandatory pre-filing requirement without going to the subject matter jurisdiction. It can be waived. There are cases where, for instance, you have to go to an administrative tribunal. And that's mandatory. And we're not saying that this was optional. We're agreeing that it was mandatory. But it does not make it subject matter. If there's one thing that's a political question in California, it's water. And I believe that an argument can be made that the statute recognizes that where the Federal Government is going to intercede and adjust water rights in the State of California, only two people can do that, can request the Federal Government to come in. One, the Governor of the State of California, who must run and must run more often than normally recently. And two, the head or the agency which has primary, I think the word, jurisdiction over it. Isn't that reflective of a delicate balance of political power between the Federal Government and the State of California? I agree with you, Your Honor. And shouldn't we follow it? We should follow it. Exactly. But the question is, it's not a given here that Dave Spaff did not have written delegations. It is not a given. There was no, Dave Spaff was open to be deposed. There could have been an information request sent to the United States. This issue was never, ever brought up. And so there is nothing in the record. I agree, it was never brought up. But if it is jurisdictional, it's not too late to bring it up. Is it your position that anyone in Mr. Spaff's division could have written that letter, including the janitor? No, but Dr. Spaff was unquestionably the division director. There's no dispute about that. And the only issue is legally whether that division counts as agency for purposes of the Federal Safe Drinking Water Act, not for purposes of necessarily even California law. The question is, what are they meaning here in the Safe Drinking Water Act? There's nothing that I know of in the Safe Drinking Water Act that says, and you look to California law to find out the answer. It may be that that's true. But it may also be that all you need to do is find the agency in the state that has jurisdiction. You mean it's up to the feds to decide who is the state agency with jurisdiction over safe drinking water, not for the state to designate it? Well, in this case it appears to us that the state agrees that Dr. Spaff had the authority. The state sent its witnesses to decide. Would you answer my question? Is it a federal determination, or is it a state determination, as to which is the agency that has jurisdiction over safe drinking water? I imagine ultimately it's a state issue. It is a state issue, isn't it? Okay. Counsel, that statute has an A and a B in it. The A is the chief executive officer of the state, which would undoubtedly be the governor of California. The B says the agency of such state. Now, it's interesting that we would require either the governor or, under the United States position today, a whole panoply of lower bureaucrats in California who could have authorized such a thing, since we start with DHS and then start moving down to various divisions of which Dr. Spaff was one of them. That would be an interesting juxtaposition to say it's either got to be the governor or it could be a whole bunch of other people. Well, I don't think it should be a whole bunch of other people. I think it needs to be the agency of the state which has jurisdiction. And the question is where? I mean, you could have a situation where there's the secretary of the Department of Health, and within there is various departments, and under that are various agencies. And the question is where in there do you find the agency that has jurisdiction? There's a very good reason why Congress might have designated that in the alternative. In the federal system, it would have been sufficient to have said the president without designating an agency, since the president can order agencies to do certain things. In some states, and I don't know whether this is true in California, those agencies have independent authority, and members of the cabinet are elected separately. They do not report to the governor and are not controllable by the governor. And so Congress may have well accounted for those kinds of situations by allowing agencies that might have independent authority to independently request such a matter. But it wouldn't authorize anybody in the bureaucratic system who might have apparent authority. I'm not suggesting that. I mean, we're suggesting that Dr. Spath was the head of the, quote, agency as agencies defined in the California Government Code, Section 100 and 11405.3. An agency is a division. He was the head of that division, so he was the head of an agency that had jurisdiction over drinking water. And that, moreover, there was a question posed to me, I think, Judge Bea, about what was the jurisdiction of the court. This jurisdiction of the court was founded not only on federal question jurisdiction, but also on 1335, 28 U.S.C. 1345, and 1355 were pled in the complaint, the United States as a plaintiff, and in any action brought by the United States for a penalty. And regardless of how this issue resolves itself, there's independent bases for the court to have taken that, and there's cases in the Ninth Circuit, Clean Air Act cases, that deal with that 1345 independent grant of jurisdiction. And so in our view, this does not go to the subject matter jurisdiction, and it was properly viewed by Judge Vogel as having been waived. Is it your position that the 1345 would give independent jurisdiction to the government, federal government, to seek penalties, irrespective of the section 300F? I think that's a close question in the cases, Your Honor, but I think 1355 certainly would give an independent basis, 28 U.S.C. 1355. So then if we find that there's no jurisdiction to, because there's an improper request by the state, the penalty portion of this should be affirmed, but not the divestment? No. I would say that once you're in front of a court with jurisdiction, then it has, that he had the right to, there was nothing unfair about him doing everything within his equitable powers, and there's a. If that's so, then why even fool around with the request from the state? The request, well, in our view, it's not subject matter jurisdiction. In our view, it doesn't go to subject matter jurisdiction. So if you disagree with me on that, then I understand where you're coming from. But in my view, I'm saying I don't believe it's subject matter jurisdiction. I believe it's a mandatory prefiling requirement that can be waived. I'd like, if Your Honors are satisfied as such as it is with that, to move on to the question about the propriety of the sale order, which I think is an important issue, probably the most important issue, and the question of the role of the Public Utilities Commission. First of all, I'd like to say, as we cite in our brief, where a statute does not clearly limit a court's equitable jurisdiction, the court has available to it whatever is necessary to do equity, and we cite those Supreme Court cases. And in this statute, as Judge Tallman pointed out, the court has the power to enter such judgment as protection of the public health may require, which is incredibly broad. The issue of whether the district court had the power to order receivership or divestiture was not briefed below, and we believe it's been waived. I mean, the cases that we cite in our brief go to the merits, but we think that this court should find that that issue was waived as to the power. Now, as to whether it was an abuse of discretion, obviously that was argued vigorously below, and I'd like to turn to that because there's a big, I think, disagreement that can be resolved by looking at 326F2nd 1014-1025, 11 pages of factual findings that the district court put forward about the condition of the systems after 1994, after Tom Adcock became in charge of the systems. And it is absolutely a misstatement of the facts that the judge had before it to say that the conditions improved. The judge found that there were very serious conditions that were going on at that time, including a boil water order that went on for ten months, including people who had to use bottled water for years, including failure of the lead and copper rule going forward to 1998, including all the violations of the MCL that were adjudicated in 2000 and 2001. And as the court notes, up to and including the time of trial, violations continued unabated. And so the court acted well within its discretion to decide that the situation had not improved. Do you agree with the statement made by counsel that a facet of equitable jurisdiction is to impose the least drastic remedy? All right. What would be wrong with having the receiver run this business up until the point where all the regulatory requirements were met and have them continue running it until that time and then turn it back to the Adcocks? There was no evidence. I agree that you have to use least drastic or less drastic remedies before you go to more drastic remedies. But the evidence before the court was that there was no money in the systems. The unrebutted evidence at trial, Patricia Adcock testified that in order to make repairs of the systems, you had to get money loaned to the companies. She testified that banks would not lend money. There was nothing on the balance sheet to prove that there was any money. And so the receiver would have no way of bringing these companies into compliance. And as the court noted, the purchasers are undoubtedly in a better position to repair these systems than the receiver is, because the receiver has no way of getting a bank to loan money. It was definitely always anticipated that this was a temporary thing. Secondly, there was no managerial competence within the organization to run these. The testimony of which the 11 pages of factual findings was that the systems were being run to a detriment of the public health. That wasn't going to change. The receiver here is not a public health expert. And there was unrebutted testimony at trial that the public agencies were spending hundreds and hundreds more hours dealing with these systems than with any other systems within their jurisdiction. They simply did not have, and it is not their job, to handhold public water systems. And the court found that the financial situation and the managerial incompetence were the real things that meant you couldn't just keep it going this way. The court said they had to divest, and then they had to sell it at not the highest price to a non-profit organization, a couple of companies. But the prices that were obtained for three of the systems were less than the highest bid received. But the court gave a credit to the Adcocks, so there was no harm to the Adcocks. He took it as if it was the highest bid. Do you think that Mr. Adcock might have some suspicions along that line? Because on the one hand, a penalty is raised, right? But then it's lowered to compensate him for selling it for less than the full amount. The penalty was put at $500,000. It was lowered to $200,000. And they said, you've made $300,000, Mr. Adcock, because we're only taking $200,000. Well, the penalty wasn't raised. In fact, we briefed in the lower court, and there's many, many decades of jurisprudence on the point that you start at the statutory maximum, which in this case was over $10 million, $17 million. And then you look at the statutory factors, and you go down and down and down. And the court did a detailed analysis of the factors that are set forth in the Safe Drinking Water Act and in similar statutes and came down from the top. He didn't dream up a $500,000 penalty and then offset. And we think that the penalty, there was more money in the Adcocks and the defendants that could have supported a higher penalty. But he made factual findings starting at the statutory max, came down, and then said, well, I understood and I took into account your complaint that the Pajaro Sunny Mesa systems were sold for less than the highest bid. And so they were compensated. There was no harm to them. In fact, the district court said that the penalties could have gone as high as $400 million. $400 million. If he found $25,000 a day on each and every day of continuing violations. Yeah. He counted them as one-day violations. But when you haven't tested for lead and copper for over four years, those are continuing violations. And there's case law that would support that. And so the penalties were off the charts here. And a $500,000 penalty is quite modest compared to what the statutory maximum would have provided for. As to the $6 million, I'd just like to point out, as to the $6 million that was supposedly spent by these systems that Mr. Fairman alluded to, most of that money was spent before this trial even took place. Only actually $170,000-odd of that was spent on the small systems after the date of the trial. So the $6 million figure is quite, quite bloated. The vast bulk of that money was spent on the Salinas system, which the defendants still own. And so it's very unclear to us why that argues for one thing or the other. If they spent money on the small systems, they did it at their own risk. The court did not order them to spend any money on the small systems, because he knew that they were getting ready to be sold. And he did not order it. The only repairs that were ordered was to the Salinas system that the court was to maintain. The last point I'd like to make is that the court looked at other alternatives that it could have had in front of it. And it said, I looked at the fact that the county issued orders. I looked at the fact that the state issued orders. I looked at the fact that I myself issued a summary judgment order finding over 200 violations. And yet the penalties have been, the violations have continued unabated. And they have continued up to and including trial. And I find that simply issuing an injunction would be a waste of time and detriment to the public health. And we have to remember that people were drinking bottled water at the time of this, the time the judge made the decision. And moreover, the defendants are saying, well, you know, perhaps the judge should have had another hearing in 2004. And whatever's in the record in the receiver's report shows you that there's still very, very serious problems going on at these systems, even at the time that the judge finally issued the sale order in 2004. I see that my time is up. Thank you. All right. Thank you. Rebuttal, Mr. Fairman? No matter how generous you are. I'll give you a little more than 39. Okay. Thank you. Wow. It's hard to know where to begin. First of all, I don't think the record supports some of counsel's statements in terms of unabated violations. To the contrary, most of these violations took place before 95. There were a few after 2000 and 2001. They weren't committed by the Adcocks. The courts did not find they were committed by the Adcocks. And the Adcocks are the ones who were born the brunt of this. The $6 million was required by the or was recommended by the Black and Veatch report. The court ordered those to be implemented. And I think it's illustrative of the court's errors because most of them I agree with counsel. They had nothing to do with the violations that occurred in this case. What reason is there for that? Also, there was a two-year disconnect between the trial and the time that the vestiture was finally implemented. And the record was very different. The court premised its views on the absence of financial capability to make those improvements. They had made them by then. It acknowledged Tom Adcock's abilities, and he proved those for the most part. The errors the government pointed out, had they been placed in context, would have been seen by a public utilities commission or anyone familiar in this area that the kinds of problems that occurred in some of the buyers that were publicly reported, the court was not interested in that. It was convinced that this family that operated this utility was doing so in some horrible fashion. But we do have you're stuck with some pretty tough findings. Yes. We would have to find clearly erroneous. We don't. We have not questioned the court's findings of liability nor their seriousness. What we're questioning is finding of the continuing recalcitrance on the part of your clients. That's since Tom Adcock took over. That's not in there. And that was since 95. It was pretty strong language. I read through those orders. Well, okay. I guess I'd have to be convinced that a Federal court is empowered to, in effect, apply a criminal, put a criminal gloss on a civil statute when there is no express grant of authority to that court based on regulatory incalcitrance. Mr. Ferron, the language of the statute talks about taking into account the seriousness of the violation in imposing civil penalties up to $25,000 for each day of violation, and he found hundreds of violations. Well, I'm not addressing that point, Your Honor. I'm satisfied with our showing. But my point is, really goes to divestiture, and particularly, as particularly illustrated by the divestiture of Toro, which was the cleanest of the systems. You let them keep Alisal, the Salinas division, which had had some recurring problems. It's a bigger system. One would expect that. And regulatory officials find that all the time and make judgments about whether the improvement should be made and how much should be spent and how much should be reimbursed. This Court really, and it was shown in trading off that $300,000. I quite agree with Judge Bea's views on that, or suspicions about that. But to trade off a – what the Court acknowledged was a taking, an inadequate compensation for property against a penalty shows that the Court's state of mind was penal in nature. And that's not what this statute is. It is a regulatory civil enforcement proceeding. So it's quasi-criminal in the sense that the fines to be imposed are intended to be coercive and punitive. I don't have a problem with the fines. I'm talking about divestiture. I believe that the most egregious error, once you get beyond jurisdiction with the Court's order of divestiture, when the Public Utilities Commission has plenary authority over those types of decisions and is perfectly capable and no evidence that it was not perfectly capable because it was never invoked. Okay. I think we understand, Your Honor. Thank you. Thank you very much. Go ahead. My question, Mr. Fairman, do you object to barring the Adcock family from going into the water business for the rest of their lives unless the judge approves? The Adcock family is not really in a position to continue. If you mean the senior Adcocks, I have no objection to that. I don't think they have any objection to that. It's – How about the junior Adcocks? But to save these systems, yes, and that's what's happened. Tom Adcock is very confident. Thank you. All right. Thank you. The case just argued is submitted, and we'll now hear argument in ECM Inc. versus Placer Dome U.S. Inc.
judges: Tallman, Bybee, Bea